UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LORI PERDUE,

        Plaintiff,        Civil Action No.: 15-14006
                           Honorable Victoria A. Roberts
        v.                Magistrate Judge Elizabeth A. Stafford

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,

        Defendant.
_____/

# REPORT AND RECOMMENDATION
## ON CROSS MOTIONS FOR SUMMARY JUDGMENT [R. 17; R. 18]

      Plaintiff Lori Perdue appeals a final decision of Defendant Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits ("DIB") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions, referred to this Court for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). [R. 3]. The Court finds that the administrative law judge's ("ALJ") decision is supported by substantial evidence, and thus

**RECOMMENDS**:

- **GRANTING** the Commissioner's motion for summary judgment **[R. 18]**;

- **DENYING** Perdue's motion **[R. 17]**; and

- **AFFIRMING** the Commissioner's decision pursuant to sentence four of 42 U.S.C. § 405(g).

## I. BACKGROUND

### A. Perdue's Background and Disability Application

Perdue was 49 years old when she filed her application for DIB benefits on January 9, 2013. [R. 11-5, Tr. 153-54]. Her alleged onset date was February 29, 2012. [*Id.*]. She had past relevant work as an order filler. [R. 11-2, Tr. 32, 73-75]. Perdue claimed to be disabled due to lumbago, fibromyalgia, anxiety, depression, and bursitis. [R. 11-3, Tr. 84-85]. After a hearing, the ALJ determined that Perdue was not disabled. [R. 11-2, Tr. 20]. The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. [*Id.,* Tr. 1-4]. Perdue timely filed for judicial review. [R. 1].

### B. The ALJ's Application of the Disability Framework Analysis

A "disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner determines whether an applicant is disabled by analyzing five sequential steps.  First, if the applicant is "doing substantial gainful activity," he or she will be found not disabled. 20 C.F.R. § 404.1520(a)(4).  Second, if the claimant has not had a severe impairment or a combination of such impairments[1] for a continuous period of at least 12 months, no disability will be found.  *Id.*  Third, if the claimant's severe impairments meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, the claimant will be found disabled. *Id.*  If the fourth step is reached, the Commissioner considers its assessment of the claimant's residual functional capacity ("RFC"), and will find the claimant not disabled if he or she can still do past relevant work. *Id.*  At the final step, the Commissioner reviews the claimant's RFC, age, education and work experiences, and determines whether the claimant could adjust to other work.  *Id.*  The claimant bears the burden of proof throughout the first four steps, but the burden shifts to the Commissioner if the fifth step is reached.  *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

---

[1] A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities."  § 1520(c).

Applying this framework, the ALJ concluded that Perdue was not disabled. At the first step, he found that Perdue had not engaged in substantial gainful activity from her alleged onset date onwards. [R. 11-2, Tr. 22]. At the second step, he found that Perdue had the severe impairments of fibromyalgia, cervical degenerative disc disease, obesity, right greater trochanteric bursitis, left ankle fractures status post open reduction internal fixation, depression, and anxiety. [*Id.*]. Next, the ALJ concluded that none of Perdue's impairments, either alone or in combination, met or medically equaled the severity of a listed impairment. [*Id.*, Tr. 23-25].

Between the third and fourth steps, the ALJ found that Perdue had the RFC to perform light work as defined in 20 CFR 404.1567(b) with the following additional limitations:

> She cannot work around hazards, including unprotected heights and around dangerous moving machinery. She cannot climb ramps or stairs more than occasional [*sic*] and cannot drive commercial motor vehicles. The claimant is limited to unskilled work. Since September 15, 2013, the claimant also must be allowed to sit or stand at will due to the fracture of an ankle, although this restriction may not continue for twelve continuous months.

[R. 11-2, Tr. 25]. At step four, the ALJ found that Perdue could not perform past relevant work. [*Id.*, Tr. 32]. With the assistance of VE testimony, the ALJ determined at step five that based on Perdue's age, education, work

experience, and RFC, she could perform the representative occupations of production assembler, sorter and inspector, and packager, for which significant jobs existed in the economy. [*Id.*, Tr. 33].

## II. ANALYSIS

### A.

Pursuant to § 405(g), this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made in conformity with proper legal standards. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks and citation omitted). Only the evidence in the record below may be considered when determining whether the ALJ's decision is supported by substantial evidence. *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007).

The significant deference accorded the Commissioner's decision is conditioned on the ALJ's adherence to governing standards. "Chief among these is the rule that the ALJ must consider all evidence in the record when making a determination, including all objective medical evidence, medical

signs, and laboratory findings." *Gentry*, 741 F.3d at 723. *See also Rogers*, 486 F.3d at 249. In other words, substantial evidence cannot be based upon fragments of the evidence, and "must take into account whatever in the record fairly detracts from its weight." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (internal quotation marks and citation omitted).

The Commissioner must also adhere to its own procedures, but failure to do so constitutes only harmless error unless the claimant has been prejudiced or deprived of substantial rights. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009). An ALJ's failure to use an "adjudicatory tool" that does not change the outcome of the decision is harmless. *Id.* at 655-56. On the other hand, substantial errors like ignoring evidence in the record or failing to follow the treating physician rule are not harmless. *Id.*; *Gentry*, 741 F.3d at 723, 729; *Cole v. Astrue*, 661 F.3d 931, 940 (6th Cir. 2011).

Perdue argues that the ALJ's RFC did not properly account for her severe depression and anxiety, for her moderate deficiencies in concentration, persistence, or pace ("CPP"), or for her need to use a cane. Because substantial evidence supports the RFC, the Court finds that the ALJ's decision should be affirmed.

6

**B.**

In his decision, the ALJ found that Perdue had the severe impairments of depression and anxiety, among others. [R. 11-2, Tr. 22]. Perdue argues that the ALJ's RFC limiting her to "unskilled work" with no other non-exertional limitations, and hypothetical that incorporated that RFC, are insufficient to account for severe mental impairments, citing *Eiseler v. Barnhart*, 344 F. Supp. 2d 1019 (E.D. Mich. 2004), and *Walker v. Barnhart*, 258 F. Supp. 2d 693 (E.D. Mich. 2003). Relying on this authority, Perdue argues that the ALJ conflated work skills with mental abilities.

The Commissioner responds that the ALJ's restriction of Perdue to "unskilled work" accommodates her mental impairments, as "unskilled work" is a defined as "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time," and that "a person can usually learn to do the job in 30 days, and little specific vocational preparation and judgment are needed." 20 C.F.R. § 404.1568(a). The Commissioner further argues that an ALJ's hypothetical question to a VE need not mention the claimant's severe impairments. The Court agrees.

The Sixth Circuit did rule in *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235 (6th Cir. 2002), that the hypothetical posed to the VE should focus on

7

the claimant's overall state, including his or her mental and physical impairments. *Id.* at 239. Afterwards, the courts in *Walker* and *Eiseler* found remand to be appropriate because the ALJ's hypothetical questions referenced only restrictions to unskilled work, and not to the claimants' severe mental impairments. *Walker*, 258 F.Supp.2d at 701-02; *Eiseler*, 344 F.Supp.2d at 1029. But as noted by the Commissioner, the Sixth Circuit later rejected that reading of *Howard*. "[A]n interpretation of *Howard* that would require vocational experts to evaluate the effect of medical conditions would be inconsistent with the purpose that vocational experts serve under social security regulations." *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004). The *Webb* court also noted that a requirement to list a claimant's medical conditions in hypothetical questions to the VE would contravene earlier Sixth Circuit law. *Id.* For instance, in *Foster v. Halter,* 279 F.3d 348, 356 (6th Cir. 2001), the court found that a hypothetical question need not reference a claimant's medical conditions. And in *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777 (6th Cir. 1987), the court ruled that a vocational expert that "takes into account plaintiff's limitations" is satisfactory. Thus, the ALJ need not describe the mental and physical impairments to the VE in crafting an accurate hypothetical.

Furthermore, "[a] claimant's severe impairment may or may not affect his or her functional capacity to do work. One does not necessarily establish the other." *Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007) (internal quotation marks and citations omitted). It is true that "in some cases the limitation to 'unskilled work' may not adequately address a concentration deficit. However, the reviewing court's task is to examine the record as a whole and determine if substantial evidence supports the ALJ's RFC." *Cole v. Comm'r of Soc. Sec.*, 105 F. Supp. 3d 738, 744 (E.D. Mich. 2015) (collecting cases). Perdue bears the burden of proving that she requires a more restrictive RFC. *Preslar,* 14 F.3d at 1110. She has failed to do so.

To support her claim that she requires a more restrictive mental RFC, Perdue cites her own testimony that she suffers from panic attacks, depression that has improved, and memory deficits. [R. 17, PgID 610]. She cites the March 2013 opinion of psychiatric consultant Fariha Qadir, M.D., who diagnosed her with panic disorder and dysthymic disorder (in partial remission), and stated that "panic disorder can cause problems at work; even with treatment she has anxiety symptoms on a regular basis that affects her ability in certain situations." [*Id.*, Tr. 610-11, citing R. 11-7, Tr. 384-86]. Perdue further refers to her reports to a social worker in May

9

2013 that she suffers from panic attacks, confusion, avoidance of people, and notes that the social worker's report described her as having impaired attention and concentration, and an anxious and depressed mood. [R. 17, Tr. 611, citing 11-7, Tr. 408-12]. She cites the ALJ's description of a September 2013 psychiatrist's report as indicating that her symptoms included irritability, anxiety, panic attacks, avoidance of places, decreased concentration, mood swings, sadness and sleeping problems. [R. 17, PgID 611, citing 11-2, Tr. 29]. But none of this evidence demonstrates that Perdue requires a more restrictive mental RFC or that the ALJ's decision is not supported by substantial evidence.

The only medical opinion suggesting that Perdue could not perform unskilled work was provided by Dr. Qadir, but the ALJ gave this opinion only some weight, noting that it is "quite vague" and "does not provide a function-by-function analysis." [R. 11-2, Tr. 31]. The ALJ noted that Dr. Qadir's own mental status examination did not reveal findings that were consistent with panic disorder, and that his findings appeared to be based upon Perdue's self-reports. [*Id.*]. These statements accurately reflect Dr. Qadir's report. [R. 11-7, Tr. 384-86].

The ALJ additionally found Perdue's statements concerning the intensity, persistence and limiting effects of the symptoms of her mental

10

impairments to be not entirely credible because she did not appear to have continuous treatment for them, because there were no documented episodes of her panic attacks in the record and no related emergency room visits or psychiatric hospitalizations, and because her medication has been shown to improve the symptoms of her depression, anxiety, and sleeping problems. [R. 11-2, Tr. 30]. And the ALJ gave some weight to the March 2013 opinion of state agency psychiatrist Ashok Kaul, M.D. that Perdue "can understand, remember and carry out simple and moderately complex instructions, make simple and moderately complex work-related decisions and judgments," and "can react appropriately to supervision, coworkers and work situations, deal with changes in work settings, set realistic goals and make plans independently." [*Id.*, Tr. 30-31 citing R. 11-3, Tr. 84-90, 91-93].

Consistently with Dr. Kaul's findings, the ALJ determined that Perdue had moderate difficulties with CPP. [R. 11-2, Tr. 24; R. 11-3, Tr. 94-95]. But the ALJ found that Dr. Kaul's assessment was not restrictive enough based on later record evidence such as a May 2013 mental status examination showing impaired attention and concentration, [R. 11-7, Tr. 408-14], and ruled out semi-skilled work from Perdue's RFC. [R. 11-2, Tr. 31]. The ALJ further reasoned that the RFC was consistent with Dr. Qadir's opinion, which supports the finding of Perdue's severe mental

11

impairments but did not limit Perdue to any specific level of work. [R. 11-2, Tr. 31]. And the ALJ explained that his limitation of Perdue to unskilled work is due to her moderate deficiencies in CPP, which are caused by her severe mental impairments. [*Id.*].

Perdue has not demonstrated that the ALJ's findings are not supported by substantial evidence, only that she disagrees with them. Her disagreement is not grounds for remand. "If the Secretary's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir.1994) (citations and internal quotation marks omitted).

## C.

Perdue also argues that the ALJ failed to incorporate her moderate deficiencies in CPP into the RFC; she acknowledges that this is the same as her first argument. [R. 17, PgID 613]. As explained above, the ALJ based his unskilled work limitation on Perdue's CPP deficiencies, but she nonetheless alleges that "the RFC is devoid of any restriction in this area." [*Id.*, PgID 614].

This common argument has resulted in inconsistent holdings among the reviewing courts, and ALJs have therefore been urged to explain their reasoning. *Southworth v. Comm'r of Soc. Sec.*, No. 12–12243, 2013 WL 3388946, at *16 (E.D.Mich. July 8, 2013) (collecting cases). In this case, the ALJ explained at the end of his step-three analysis that the limitations in the "paragraph B" criteria (including the moderate CPP finding) were not a RFC assessment, but are instead used to rate the severity of mental impairments at steps two and three of the sequential evaluation process. [R. 11-2, Tr. 25]. He then noted that his RFC incorporated his assessment of Hill's mental function. [*Id.*]. In *Southworth*, the Court found that the same language the ALJ used here meant that the ALJ believed his moderate CPP rating was fully accounted for by the limitations in his RFC assessment. See *Southworth*, 2013 WL 3388946, at *15–17. Therefore, the Court's review narrows to whether substantial evidence supports the ALJ's belief that, despite his moderate difficulties in CPP, Hill could perform unskilled work on a sustained basis. *See id.*

As discussed above, the ALJ found that Perdue's alleged symptoms were not entirely credible, and that she was limited to unskilled work specifically because of her moderate CPP limitations. [R. 11-2, Tr. 30-31]. This was supported by the findings of Dr. Kaul, who opined that Perdue

13

was even less limited than the ALJ ultimately held. [*Id.*]. Thus, substantial evidence supports the ALJ's RFC assessment.

### C.

Perdue's final argument pertains to limitations arising out of her fracturing her ankle in three places in October 2013, and her use of a cane thereafter. [*See, e.g.,* R. 11-2, Tr. 54; 11-7, 441-44, 448-50; R. 11-8, Tr. 468, 522-55]. She argues that the RFC fails to account for her need for a cane; that the ALJ's finding that her fractures were severe impairments contradicts his RFC assessment that the sit/stand opinion may not continue for twelve continuous months; and that the ALJ's decision would require her to be capable of performing a full range of light work. These arguments are without merit.

Perdue claims a severe impairment is "defined as a condition which must be *expected* to last for a continuous period of at least 12 months," [emphasis in original], citing 20 C.F.R. § 404.1509. [R. 17, PgID 615]. But Section 404.1509 defines how long an impairment must last in order to be *disabling*, not severe. The definition of a severe impairment – "any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities"[2] – does not include a

---

[2]  20 C.F.R. § 404.1520(c).

durational requirement. So the ALJ's finding that this severe impairment may not affect Perdue for twelve continuous months is not contradictory. And as a factual matter, in April 2014, Suzanne Beth Eiss, PA-C, wrote regarding Perdue's status that "it can take a full year to reach maximal medical improvement," and that "her ankle may always give her some soreness or stiffness long term." [R. 11-8, Tr. 525]. So the ALJ had a basis in record to determine that Perdue's ankle would improve within twelve months, leaving only some soreness and stiffness.

Consistently with the indication that Perdue would improve, by April 2014, Perdue had met her long-term goal of ambulating "household distances without [an] assistive device." [R. 11-8, Tr. 522]. She was reported to be using her cane as needed later that month, [*Id.*], but as the Commissioner notes, there was no prescription for an assistive device within the record, nor an opinion that she required one. [R. 18, PgID 641-42]. Social Security regulations require such documentation before a hand-held assistive device such as a cane can be found to be medically required. SSR 96-9p., 1996 WL 362208. The lack of a prescription or opinion that Perdue required a cane for walking deems this case distinguishable from the cases she cites. *Fobbs v. Colvin*, No. 13-11288, 2014 WL 4638913, at *12 (E.D. Mich. Sept. 16, 2014) (three doctors opined that claimant

required a cane for walking); *Jones v. Comm'r of Soc. Sec.*, No. 1:10-CV-840, 2012 WL 967509, at *5 (W.D. Mich. Feb. 8, 2012), *adopted by* 2012 WL 967514 (W.D. Mich. Mar. 21, 2012) (cane prescribed by the claimant's doctor).

Perdue further asserts that "the hypothetical claimant would still be expected to perform the standing and walking requirements of light work of 6 hours out of an 8 hour work day" even though all three jobs listed by the VE would allow for Perdue to "sit or stand at will due to the fracture." [R. 11-2, Tr. 25, 78; R. 17, PgID 616]. It is untrue that Perdue would be expected to work a full range of light work; the sit/stand option means that she would be expected to perform only a limited range of light work. *Malone v. Comm'r of Soc. Sec.*, 507 F. App'x 470, 473 (6th Cir. 2012) (substantial evidence supported ALJ's finding that claimant could perform limited range of light work). The only question is whether the ALJ's finding that Perdue could perform a limited range of light work is supported by substantial evidence, and whether she had sustained her burden of demonstrating that she requires a more restrictive RFC. Given the evidence described above that Perdue's ankle was expected to improve within a year, leaving her with only soreness and stiffness, and given the lack of documentation that a

cane was medically necessary, she has not sustained her burden and the ALJ's decision should be affirmed.

## III. CONCLUSION

The Court **RECOMMENDS** that the Commissioner's motion for summary judgment **[R. 18]** be **GRANTED**, that Perdue's motion for summary judgment **[R. 17]** be **DENIED**, and the Commissioner's decision be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g).

s/Elizabeth A. Stafford<br>ELIZABETH A. STAFFORD<br>United States Magistrate Judge

Dated: January 9, 2017

## NOTICE TO THE PARTIES REGARDING OBJECTIONS

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation. *Willis v. Secretary of*

*HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). A copy of any objection must be served upon this Magistrate Judge. E.D. Mich. LR 72.1(d)(2).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this Report and Recommendation to which it pertains. Not later than fourteen days after service of objections, **the non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc. The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation. If the Court determines that any objections are without merit, it may rule without awaiting the response.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on January 9, 2017.

                                              s/Marlena Williams
                                              MARLENA WILLIAMS
                                              Case Manager